UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DORIS D. CRAWFORD,

                            Plaintiff,

           -against-

LUTHERAN MEDICAL CENTER,

                           Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

**08-CV-3429 (NGG) (LB)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pro se Plaintiff Doris Crawford ("Crawford"), proceeding *in forma pauperis* under 28 U.S.C. § 1915, brings this Complaint (Docket Entry # 1) against her former employer, Defendant Lutheran Medical Center ("LMC"), alleging employment discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §§ 2000e et seq. LMC moves to dismiss the action under Federal Rules of Civil Procedure 12(b)(6) and 8(a)(2). For the reasons set forth below, the court grants Defendant's motion in part and denies it in part.

**I.  BACKGROUND**

Plaintiff, an African-American woman, was employed by LMC as an administrative assistant. (Compl. at 6-7.)[1] She alleges that LMC violated Title VII by "[f]ail[ing] to hire" her, "[t]erminat[ing] [her] employment," allowing or fostering a "hostile work environment," and giving her "[u]nequal terms and conditions of [] employment" because of her race, and further alleges that LMC retaliated against her when she complained about the discrimination to which she was subjected. (Id. at 3.)

---

[1] Plaintiff's Complaint is comprised of several documents filed with the court together as a single document. For ease of reference the court uses the pagination of the electronic case filing system in referring to Plaintiff's Complaint.

1

Plaintiff was "permanently" employed by LMC, though in a probationary status, as an administrative assistant in LMC's executive office beginning on February 11, 2008. (Id. at 6.) An email attached to her Complaint indicates that Plaintiff worked in some capacity at LMC prior to that date. (Id. at 10.) Plaintiff's employment was terminated on March 18, 2008. (Id. at 6.) Plaintiff alleges that personal enemies of hers, who did not work at LMC and were "known to [Plaintiff] through [her] religious affiliation, . . . which is one of Jehovah's Witnesses," began conspiring against her with Plaintiff's co-workers at LMC. (Id.) Those personal enemies include Mr. Rodney Jones ("Jones"), who Plaintiff alleges has been "involved in crimes against [Plaintiff] for several years now through harassment, stalking, and other serious means being investigated"; and Ms. Dwani Bush, Plaintiff's alleged fiancé's ex-wife, who Plaintiff alleges "is stalking and harassing" her and her alleged fiancé, a Mr. Kevin Bush. (Id.)

Though Plaintiff states that she does not believe that any of her co-workers at LMC knew Jones or Dwani Bush, she nonetheless alleges that at least two of her co-workers began regularly and frequently communicating with them after Plaintiff started working at LMC. (Id. at 6-7.) Plaintiff alleges that she overheard LMC employee Christian Richardson ("Richardson") "constantly" speaking on the phone with Jones, and that Richardson took time off from work to "visibl[y] support" Dwani Bush by going to the place "where [Dwani Bush] was being forcibly removed and taken to jail for not leaving premises she'd been given notice prior to several weeks before to leave." (Id.) Plaintiff further alleges that Richardson assisted in Dwani Bush's release from jail, and used a web site to organize other LMC employees to help Dwani Bush. (Id.) She also alleges that LMC employee Thomas Gerardi ("Gerardi") "has taken Dwani Bush into his home since no one would take her in due to her actions." (Id.) Plaintiff further alleges that an LMC employee she worked for, Karen Lennon ("Lennon"), somehow had knowledge of

2

Plaintiff's problems with Dwani Bush and was "very emotionally attached to the publicly known personal situation." (Id. at 7.)

Plaintiff alleges that LMC employees—primarily Lennon—opposed her decision to marry Kevin Bush because Plaintiff is African American and Kevin Bush's ex-wife, Dwani Bush, is "a young Spanish lady." (Id.) Plaintiff claims that LMC employees preferred Dwani Bush "simply because she is 'Spanish.'" (Id.) As evidence, Plaintiff alleges that "[t]hey made no bones about letting me know that by speaking words, not conversations in Spanish like 'hola,' 'adios' and other." (Id.) Plaintiff also alleges that "[e]ach day Karen [Lennon] and a particular doctor would have their daily conversations about it making it clear they wanted the 'Spanish girl' to be 'remarried' to [Kevin Bush]." (Id.) Plaintiff alleges that "Karen [Lennon] even made the statement that 'they're only fighting over some rings,' 'why don't she just suck it up and let it go' – that was in reference to [Plaintiff] leaving [her] fiancé to give him to the 'Spanish girl.'"[2] (Id.) In further support of her claim that LMC employees have a preference for Hispanics, Plaintiff attaches an email to her complaint in which an LMC employee relates a statement made by a third-party to that LMC employee suggesting that LMC has a preference for hiring people with Hispanic last names. (See id. at 10.)

Plaintiff claims that because of the race-based preferences of LMC employees, specifically Lennon, Plaintiff was denied a permanent position as an executive administrative assistant because she is African American. (Id. at 7.) Plaintiff further claims that she was fired in retaliation for complaining about the hostile work environment that resulted from LMC employees becoming involved in her personal feud with Jones and Dwani Bush. (Id. at 6-7.)

---

[2] Plaintiff also alleges a litany of perceived slights and petty incivilities perpetrated by Lennon against her, which appear to bear no relation to her claims of race discrimination. (See Compl. at 7.)

3

## II. DISCUSSION

### A. Legal Standards

#### 1. Notice Pleading Standard

The purpose of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007). In reviewing the complaint, the court accepts as true all allegations of fact, and draws all reasonable inferences from these allegations in favor of the plaintiff. ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

"[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation omitted). But while "the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest," Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006) (quotation omitted), even a pro se complaint will be dismissed for failing to meet the notice pleading standard of Rule 8(a)(2) if it does not contain "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "[M]ere 'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of action will not do'; rather, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 555). Though courts are required to accept a plaintiff's non-conclusory factual allegations as

4

true, courts may nevertheless determine that the "fantastic [or] delusional" character of some factual allegations renders a plaintiff's claims to relief implausible. See Samuel v. Bellvue Hospital Center, 366 F. App'x 206, 207 (2d Cir. 2010) (finding that "in the context of the fantastic and delusional nature of the majority of his complaint, [the plaintiff] failed to allege sufficient facts to render plausible his conclusory assertion that the defendants discriminated against him on the basis of his membership in a protected class" under Iqbal); see also Tyler v. Carter, 151 F.R.D. 537, 539-40 (S.D.N.Y. 1993) (dismissing complaint containing fantastic and delusional claims sua sponte under Rule 12(b)(6)).

In deciding a motion to dismiss, the court may consider matters of which judicial notice may be taken, as well as documents extrinsic to the complaint where a plaintiff "relies heavily upon [the documents] terms and effect, [thus] render[ing] the document integral to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (quotations omitted).

### 2. Pleading Standard under *In Forma Pauperis* Statute

The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) is not the only one that applies to Plaintiff's Complaint. Because Plaintiff is proceeding *in forma pauperis*, the court must dismiss the case if "at any time [] the court determines that the action or appeal is frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B)(i). "[A] complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Section 1915(e)(2)(B)(i) "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Id. at 327. This includes

5

"claims describing fantastic or delusional scenarios, [] with which federal district judges are all too familiar." Id. at 328.

### B. Disparate Treatment Claim

Plaintiff alleges that she applied for a position at LMC as an executive administrative assistant and was denied that position because she is African American. (Compl. at 7.) "To prevail on a Title VII disparate treatment claim, a plaintiff must ultimately prove that '(1) [she] is a member of a protected class; (2) [she] is competent to perform the job or is performing [her] duties satisfactorily; (3) [she] suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on [her] membership in the protected class.'" La Grande v. DeCrescente Distributing Co., Inc., 370 F. App'x 206, 212 (2d Cir. 2010) (quoting Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005)). At the pleading stage, however, Plaintiff need only allege facts sufficient to support the reasonable inference that Plaintiff suffered an adverse employment action because of her membership in a protected class. See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514 (2002); Iqbal, 129 S. Ct. 1937, 1949.

In sum and substance, Plaintiff alleges that Lennon, an employee of LMC for whom Plaintiff worked, denied Plaintiff the position for which she applied because Lennon knew that Plaintiff was planning to marry Kevin Bush, and disapproved of Plaintiff's marriage because Lennon preferred that Kevin Bush remarry his ex-wife, Dwani Bush, "because [Dwani Bush] is 'Spanish.'" (Compl. at 7.) Plaintiff's disparate treatment claim, like Plaintiff's hostile work environment claim, hinges on Plaintiff's factual allegations that her co-workers became deeply embroiled in her personal life through the actions of Plaintiff's nemeses—Jones and Dwani Bush—and came to oppose Plaintiff because of Plaintiff's desire to marry Kevin Bush. Plaintiff

6

believes that her co-workers preferred that Kevin Bush remarry Dwani Bush and not Plaintiff because they favor Hispanics over African Americans and Plaintiff is African American. Plaintiff alleges that her co-workers' preference for Hispanics resulted in her being denied the position of executive administrative assistant, and in a hostile work environment.

Although the court is obligated to assume the truth of all factual allegations in the Complaint, it reviews those allegations to determine whether they "plausibly suggest an entitlement to relief." Iqbal, 129 S. Ct. 1937, 1951. Furthermore, for actions filed *in forma pauperis* the court is obligated to "dismiss those claims whose factual contentions are clearly baseless." Neitzke, 490 U.S. at 327.

Plaintiff's own Complaint contains troubling indications that her allegations as to the existence of a conspiracy against her are Plaintiff's own delusional beliefs with no basis in fact or reality. Plaintiff never explains how she knew that her co-worker, Richardson, was speaking with Jones and Dwani Bush simply from overhearing his telephone conversations, or how she knew that Dwani Bush started living with her former supervisor, Thomas Gerardi. (Compl. at 6.) Indeed, Plaintiff admits that it is highly improbable that Richardson or Gerardi would know Jones or Dwani Bush, and states that she did not inform anyone of her personal problems with Jones and Bush. (Id.) In a letter to LMC management attached to her Complaint, Plaintiff stated that she found it "very strange" that Richardson was talking to Jones and Bush, writing that Jones and Bush "are not from New York and basically would be known only to others of us not having been raised here, gone to school here, worked here." (Id. at 9.) Plaintiff assumes that Richardson and Gerardi came into contact with Jones and Dwani Bush through Jones's efforts to "infiltrate[] [her] work relations." (Id. at 6, 8.) Plaintiff states that Jones has persecuted her "for

believes that her co-workers preferred that Kevin Bush remarry Dwani Bush and not Plaintiff because they favor Hispanics over African Americans and Plaintiff is African American. Plaintiff alleges that her co-workers' preference for Hispanics resulted in her being denied the position of executive administrative assistant, and in a hostile work environment.

Although the court is obligated to assume the truth of all factual allegations in the Complaint, it reviews those allegations to determine whether they "plausibly suggest an entitlement to relief." Iqbal, 129 S. Ct. 1937, 1951. Furthermore, for actions filed *in forma pauperis* the court is obligated to "dismiss those claims whose factual contentions are clearly baseless." Neitzke, 490 U.S. at 327.

Plaintiff's own Complaint contains troubling indications that her allegations as to the existence of a conspiracy against her are Plaintiff's own delusional beliefs with no basis in fact or reality. Plaintiff never explains how she knew that her co-worker, Richardson, was speaking with Jones and Dwani Bush simply from overhearing his telephone conversations, or how she knew that Dwani Bush started living with her former supervisor, Thomas Gerardi. (Compl. at 6.) Indeed, Plaintiff admits that it is highly improbable that Richardson or Gerardi would know Jones or Dwani Bush, and states that she did not inform anyone of her personal problems with Jones and Bush. (Id.) In a letter to LMC management attached to her Complaint, Plaintiff stated that she found it "very strange" that Richardson was talking to Jones and Bush, writing that Jones and Bush "are not from New York and basically would be known only to others of us not having been raised here, gone to school here, worked here." (Id. at 9.) Plaintiff assumes that Richardson and Gerardi came into contact with Jones and Dwani Bush through Jones's efforts to "infiltrate[] [her] work relations." (Id. at 6, 8.) Plaintiff states that Jones has persecuted her "for

years" and "finds ways to connect with people [Plaintiff] work[s] with to create a hostile and volatile work environment for [Plaintiff]." (Id.)

Plaintiff's Complaint states that after she sent the letter complaining about the perceived conspiracy against her, an LMC human resources employee interviewed her co-workers about her allegations and told Plaintiff that the people he interviewed "said they had no idea what [Plaintiff] was speaking about." (Id. at 7.) Furthermore, in her letter to LMC executives, Plaintiff admits that Kevin Bush, the man Plaintiff claims is her fiancé, called an employee of LMC to complain that Plaintiff was making harassing phone calls to him from her telephone at work. (Id. at 8.) According to the letter to LMC management, Plaintiff stated that she had been instructed not to call Kevin Bush while at work, and that she had complied with that instruction. (Id.)

Considered together, Plaintiff's own factual allegations render her claims of disparate treatment implausible, and indicate that the factual predicate of that claim—i.e., the existence of a conspiracy against her—is clearly baseless. Under either Iqbal or 28 U.S.C. § 1915(e)(2)(B)(i), Plaintiff's disparate treatment claim must be dismissed.

### C.  Hostile Work Environment Claim

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). This prohibition on disparate treatment encompasses claims that an employer required "that an employee 'work in a discriminatorily hostile or abusive environment,' so long as the discriminatory conduct at issue is 'severe or pervasive enough to create an objectively hostile or abusive work environment.'" Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001) (quoting Harris

v. Forklift Systems, 510 U.S. 17, 21 (1993)). To state a hostile work environment claim, a plaintiff must plead facts that tend to show that the complained of conduct: (1) is objectively severe or pervasive, that is, it creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates an environment that is discriminatorily hostile or abusive to the plaintiff because of the plaintiff's membership in a protected class. See Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007).

"[A] work environment's hostility should be assessed based on the 'totality of the circumstances.'" Id. (quoting Harris, 510 U.S. at 23). "Factors that a court might consider in assessing the totality of the circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) 'whether it unreasonably interferes with an employee's work performance.'" Id. The Supreme Court and Second Circuit have repeatedly cautioned that "Title VII does not establish a 'general civility code' for the American workplace." Petrosino v. Bell Atlantic, 385 F.3d 210, 223 (2d Cir. 2004) (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998)). "Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." Petrosino, 385 F.3d at 223.

Plaintiff contends that her work environment was "extremely hostile" to her because: her co-workers communicated and maintained relationships with people with whom she has an acrimonious relationship outside of work (Compl. at 6); Plaintiff's co-workers opposed her marriage to her fiancé because they supported her fiancé's ex-wife, and they discussed their opposition to Plaintiff's marriage behind her back (id. at 7); her co-workers used Spanish words

in conversation, thus demonstrating their preference for those of Hispanic origin (id.); and her co-workers, "predominantly Christian Richardson," directed unspecified "verbal taunts on a regular and daily basis" at Plaintiff, apparently as a result of Richardson's alleged friendship with Plaintiff's enemies (id. at 6). Furthermore, Plaintiff alleges that because Lennon knew and disapproved of Plaintiff's decision to marry Kevin Bush, Lennon chose not to work with Plaintiff professionally. (Id. at 8.)

Plaintiff's hostile work environment claim suffers from the same defect as her disparate treatment claim—i.e., that it is implausible and that the factual predicate is clearly baseless. However, this claim suffers from the additional defect that the Complaint fails to state a claim to relief on a hostile work environment theory. Even in view of the Second Circuit's admonition "against setting the bar too high in this context," Plaintiff's Complaint comes nowhere near to alleging the kind of conduct that a reasonable person could find to create a hostile or abusive work environment. Patane, 508 F.3d at 113 (quotation omitted). The actions of Plaintiff's co-workers, as alleged in the Complaint, amount to nothing more than impolite meddling in Plaintiff's personal life, not "'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" Id. (quoting Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003)).

Moreover, Plaintiff's factual allegations are insufficient to support the inference that Plaintiff's work environment was hostile or abusive to Plaintiff *because of her race*. "To prevail on [a hostile work environment] claim under Title VII, a plaintiff must show not only that the working environment is pervasively hostile or abusive, but also that the conduct creating that atmosphere actually constituted discrimination because of race." Hicks v. Rubin, 6 F. App'x 70, 73 (2d Cir. 2001) (quotation and alterations omitted).

10

Reading the Complaint liberally, it is clear that the hostile work environment Plaintiff complains of in her Complaint and in her letter to LMC management was the product of her co-workers' alleged involvement in her personal affairs, and their communications with Plaintiff's personal enemies—not race discrimination. Only two of Plaintiff's allegations regarding the hostility of the work environment relate in some way to Plaintiff's race. First, Plaintiff alleges that Lennon declined to work with Plaintiff because Lennon preferred that Plaintiff's fiancé, Kevin Bush, stay with his ex-wife, Dwani Bush, instead of marrying Plaintiff because Lennon prefers Hispanics, and Dwani Bush is Hispanic and Plaintiff is African American. Second, Plaintiff alleges that her co-workers at LMC occasionally used Spanish phrases, which she contends are evidence of her co-workers' racial preferences for her fiancé's ex-wife over Plaintiff. (Compl. at 7.) The bulk of Plaintiff's allegations regarding the hostility of her work environment have nothing to do with Plaintiff's race. The Complaint alleges that Plaintiff's acrimonious relationships with two outsiders "infiltrated [her] work relations" and led to the deterioration of her relationships with her fellow co-workers. (See id. at 8.) Assuming for the sake of argument that Plaintiff had actually alleged the existence of an objectively hostile work environment, Plaintiff's allegation that her work environment was hostile or abusive because of her race is simply implausible.

Plaintiff has failed to sufficiently plead a hostile work environment claim. Plaintiff has not pleaded the existence of discriminatory conduct that is objectively severe or pervasive such that a reasonable person could find it to be hostile or abusive. Furthermore, even if Plaintiff had pleaded facts that would be sufficient to permit a reasonable person to conclude that her work environment was objectively hostile or abusive, Plaintiff has failed to plead facts that would be

sufficient to permit a plausible inference that her work environment was hostile because of Plaintiff's race.

**D.      Retaliation Claim**

Plaintiff alleges that LMC retaliated against her for complaining about her discriminatory treatment to LMC management by terminating her employment. (Id. at 7.) "Title VII [] provides that 'it shall be an unlawful employment practice for an employer to discriminate against any employee because the employee has opposed any practice made an unlawful employment practice by' Title VII." La Grande v. DeCrescente Distributing Co., Inc., 370 F. App'x 206, 212 (2d Cir. 2010) (quoting 42 U.S.C. § 2000e-3(a)) (alterations omitted). "To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." Patane, 508 F.3d at 115. "A plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as [she] can establish that [she] possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (applying anti-retaliation provision of Americans with Disabilities Act, 42 U.S.C. § 12203(a)) (quotation omitted); see also La Grande, 370 F. App'x at 212. "The law protects employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination, including complaints to management." La Grande, 370 F. App'x at 212.

On March 18, 2008, Plaintiff sent a letter to LMC management with the subject line "Harassment, Discrimination and Retirement / VOID RETALIATION," in which she

12

complained that LMC employees created an "extremely hostile work environment" for her by communicating with individuals with whom Plaintiff had an acrimonious relationship outside of work, and by talking amongst themselves about Plaintiff's engagement to her fiancé, thereby involving themselves in Plaintiff's personal affairs. (See Compl. at 8-9.) Plaintiff separately stated:

> As far as discrimination is concerned, it has affected my getting the position in the Executive Office with Karen Lennon because she seemed by her own expression, very averse to my decisions, not that that mattered but it made her chose [sic] to not work professionally in dealing with me.

(Id. at 8.) Plaintiff repeatedly claimed that her co-workers' actions were "illegal in the work place." (Id. at 9.)

Plaintiff alleges that she was called into a meeting at 4:30 pm the same day she sent the letter. (Id. at 6.) At that meeting, Fred Jordan ("Jordan"), an LMC human resources employee, asked Plaintiff questions about her complaint letter, informed Plaintiff that her claims would be investigated, and told her to leave for the day. (Id.) Plaintiff alleges that "[t]he next day, March 19th [she] was told that [her] probation was terminated and not to return to work by the Office Manager." (Id.) On March 20, 2008, Jordan called Plaintiff and told her there had been no investigation into her claims but that "he interviewed some people who said they had no idea what [Plaintiff] was speaking about." (Id. at 7.)

Plaintiff alleges that she engaged in a protected activity by filing an informal complaint with management in which she complained of a hostile work environment and discrimination that she believed to be illegal, and that she was terminated as a result of that complaint letter. Though the court has determined that the conduct Plaintiff complained of did not violate Title VII, Plaintiff has alleged facts which permit the conclusion that she had a good faith, though erroneous, belief that the conduct she complained of in her complaint letter violated the law.

13

Consequently, Plaintiff's retaliation claim is legally sufficient to survive Defendant's motion to dismiss.

## III. CONCLUSION

Plaintiff has failed to allege a plausible claim to relief on her disparate treatment and hostile work environment claims. Moreover, the factual contentions underlying those claims are clearly baseless. Plaintiff has, however, sufficiently pleaded a claim for retaliation in violation of Title VII. Consequently, Defendant's motion to dismiss is DENIED as to Plaintiff's retaliation claim, and GRANTED as to all other claims.

SO ORDERED.

Dated: Brooklyn, New York
March 9, 2011

s/Nicholas Garaufis
_____
NICHOLAS G. GARAUFIS
United States District Judge